(24 Misc. Rep. 695.)

## MULLETT v. BRADLEY.

(Supreme Court, Appellate Term. October 5, 1898.)

WILD ANIMALS—ESCAPE OF ONE RECLAIMED—RIGHT OF POSSESSION.

Where a sea lion escaped from its captor's control on Long Island Sound, and disappeared, until about two weeks afterwards, when it was recaptured by a fisherman in the ocean, over 70 miles from the Sound, its original captor lost his right to it, since it had regained its liberty without animus revertendi, though it may not have reached its native place, or one suited to its existence.

Appeal from Eighth district court.

Action by James R. Mullett against James A. Bradley for conversion. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Kirsch & Roberts, for appellant.
Frederick W. Mount, for respondent.

BEEKMAN, P. J. This action is brought to recover damages for the alleged conversion of a sea lion, of which the plaintiff claimed to be the owner, a claim which the defendant, who has the animal in his possession, refused to recognize when the plaintiff made his demand for its return. It appears that the plaintiff is engaged in the business of capturing such animals, and disposing of them to those who are interested in having them for purposes of exhibition. They are caught at the islands of Santa Barbara, near San Francisco, and are then transported by rail across the continent to the East. The animal in question was one of a lot which had been obtained in this manner, and all were intended to fill an order which the plaintiff had received from persons in this city. The one in question, however, was rejected, owing to certain blemishes caused by wounds which it had received while being captured, and the plaintiff continued to retain his ownership of it until its escape from his control as hereinafter stated. Having the animal thus thrown back upon his hands, the plaintiff placed it temporarily at Glan Island, on Long Island Sound, from which place, within a few days after its arrival there, it disappeared, and the plaintiff, quite reasonably assuming that he had no prospect of ever finding it, made no effort for its recapture. This took place during the first week of July, 1896. It was not until about a year afterwards that he discovered it in the possession of the defendant, and, having satisfied himself of its identity, which it may be said is not in dispute here, demanded its surrender, which was refused. It then appeared that the defendant had purchased the animal from a fisherman, who, on the 20th day of July, 1896, had captured it in a fish pound which had been set in the ocean at a point on the New Jersey coast over 70 miles from the city of New York. The complaint was dismissed on the merits in

the court below, and the sole question involved in this appeal is whether the plaintiff had lost his right of property in the sea lion by reason of its escape from his control.

It is conceded that sea lions are feræ naturæ, and that the law applies which holds that only a qualified right of property can be acquired in them, a right which is wholly lost when, escaping from their captor, without any intention of returning, they resume their former freedom. 2 Bl. Comm. 392; 2 Kent, Comm. 348; Gillet v. Mason, 7 Johns. 16; Amory v. Flyn, 10 Johns. 102; Goff v. Kilts, 15 Wend. 550. Blackstone, referring to animals feræ naturæ, says that "these are no longer the property of a man than while they continue in his keeping or actual possession; but if at any time they regain their natural liberty, his property instantly ceases, unless they have animus revertendi, which is only to be known by their usual custom of returning." It is said by Chancellor Kent: "Animals feræ naturæ, so long as they are reclaimed by the art and power of man, are also the subject of a qualified property; but when they are abandoned, or escape, and return to their natural liberty and ferocity, without the animus revertendi, the property in them ceases." But it is quite unnecessary to multiply citations of authority for a proposition of law so well settled and familiar as this. It is quite apparent that the case under consideration comes directly within it. The sea lion in question was feræ naturæ, and the right of property which the plaintiff had undoubtedly acquired in it was, so to speak, defeasible, and always contingent upon his maintaining his right by actual control when opposed by a disposition on its part to escape and resume its former freedom of action. The evidence not only fails to show that there was any animus revertendi on its part, but the inference from the facts proven is quite the contrary. Blackstone states, as we have seen, that an intention to return, where such animals depart from the immediate control of the owner, "is only to be known by their usual custom of returning." Of course, the evidence here shows that there was no such custom, but that, at the earliest opportunity, the animal broke away from restraint, and had traveled over 70 miles from his place of confinement when he was captured, some two weeks afterwards. The necessary inference from the history of its movements is that there was decidedly no intention on its part of returning to its place of captivity, or of again submitting itself to the domination of the plaintiff. But it is contended on the part of the plaintiff that there can be no return of such an animal to its natural liberty until it has either reached its native place, or, at least, a place where the conditions of existence are normal and suitable to its habits and physical requirements. In support of this claim evidence was given tending to show that sea lions of this character are not found on the Atlantic coast, but only on the Pacific, from the Bay of San Francisco to St. Nicholas Island, or from latitude 30 north to 36 north; and that, for some reason, not fully explained, the conditions along the Atlantic coast are not favorable to their existence here in a wild state. However that may be, I do not think that the rule is subject to any such sweeping qualification. The natural liberty to which the law refers means that which the animal

formerly enjoyed, namely, to provide for itself, in the broadest sense in which the phrase may be used. In short, it may be said to have regained its natural liberty when, by its own volition, it has escaped from all artificial restraint, and is free to follow the bent of its natural inclinations. Such, it seems to us, was the case here.

It is also suggested by the counsel for the defendant that the animal had been abandoned by the plaintiff, as he made no effort to regain it after its loss, but immediately surrendered all hope of its recovery; and the case of Buster v. Newkirk, 20 Johns. 75, is referred to as at least illustrating the general principle on which he founds this claim. See, also, Story, Sales, § 211. It is, however, unnecessary to pass upon this, in view of the conclusion to which we have come that the plaintiff had lost his right of property in the sea lion by reason of the fact that it had regained its natural liberty, without any intention of returning. The case was correctly decided by the trial justice, and the judgment must therefore be affirmed.

Judgment affirmed, with costs. All concur.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.