OPINION OF THE COURT
David B. Saxe, J.
In this summary holdover proceeding, petitioner requests possession pursuant to the Emergency Tenant Protection Act ([ETPA] L 1974, ch 576, § 4) as amended by the Omnibus Housing Act ([Omnibus Housing Act], L 1983, ch 403, § 55) on the ground that respondent maintains his primary residence at his home in New Jersey. The respondent moves for summary judgment pursuant to CPLR 3212, arguing that, during the lease renewal period (120 to 150 days prior to the expiration of his lease) the premises were his primary residence and, as a matter of law, his right to a renewal lease vested at that time. Respondent further contends that this court is not a court of competent jurisdiction to determine the primary residence issue.
*751 The Housing Part of the Civil Court of the City of New York is “a court of competent jurisdiction” to entertain a primary residence issue within the contemplation of the ETPA, as amended (L 1983, ch 403, § 55). (See New York Univ. v Farkas, 121 Misc 2d 643.) The language of the statute is meant to encompass proceedings in both Civil Court and Supreme Court. Respondent’s position that resolution of the issue requires the commencement of a declaratory judgment action in Supreme Court is wrong.
The respondent occupies the premises as the assignee of one Joseph Imre Szoecz who leased the apartment from petitioner’s predecessor in title under a three-year lease which expired on August 31, 1981. The petitioner purchased the apartment building on July 22, 1981. On September 22, 1981, petitioner filed an application to remove the building from the housing rental market, stating the intention “to demolish the subject building and construct a combined residential building on the site.” No renewal lease was ever issued to respondent, nor was his rent increased.
On January 30,1981, respondent and his wife purchased a house at 14 Forest Road, Tenafly, New Jersey. State tax records for the 1982 and 1983 tax years indicate that respondent filed a “homestead tax rebate application” on which the taxpayer certifies that he “owned and occupied the claimed property as my principal place of residence” as of October 1 of the applicable tax year (NJ Stats Ann, § 54:4-3.80, subd a). There is no allegation on respondent’s part that a renewal lease was ever demanded from petitioner, and petitioner’s moving papers state that “[a]t no time has (a) Tenant filed a complaint with the C.A.B. that he has not been given a renewal lease and (a) [sic] Landlord been directed to give Tenant a renewal lease.”
The respondent’s position is essentially that he should have been given a renewal lease in 1981 because, at that time, the subject premises were his primary residence. Therefore, he argues, he should now be considered a tenant of a rent-stabilized apartment entitled to the full protection of the rent regulation statutes. His position is based on the Appellate Term decision in Short v Graves (107 Misc 2d 194, affd 109 Misc 2d 672 [App Term, 1st Dept]), which *752 respondent cites for the proposition that the right to a renewal lease under the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) “vests” 120 days prior to the expiration of the current lease, unless one of the statutory grounds for eviction could be established on or before such date. (Bradford v Holmes, 109 Misc 2d 805, affd 111 Misc 2d 927 [App Term, 1st Dept].) However, what the tenant’s status may or may not have been in 1981 is entirely immaterial to a determination of his status at the time this petition was brought.
The respondent seeks to apply a legal principle which evolved in the context of “owner-occupancy” holdover proceedings to a nonprimary residence proceeding in which no current lease is in effect. As a recent Supreme Court decision pointed out, there are “doubts as to the applicability of that line of cases [to the nonprimary residence issue]” (Bolotin v Ameri, NYLJ, Feb. 8, 1984, p 11, col 1). It is clear that the two situations are not analogous. In the former, the landlord is seeking to terminate the lease of a tenant who uses the subject premises as his home. In the latter, the landlord is merely seeking to obtain possession of an apartment which is underutilized or even unutilized by a party whose home is elsewhere and whose claim to possession of the premises does not derive from a currently effective lease.
Appropriate criteria for analysis of nonprimary residence cases are readily found in the policy underlying the rent regulation statutes and in the Omnibus Housing Act of 1983 (L 1983, ch 403). Section 55 of the Omnibus Housing Act amends section 5 of the FTP A, effective June 30, 1983, to provide that:
“A declaration of emergency may be made * * * as to all or any class or classes of housing accommodations in a municipality, except * * *
“(11) housing accommodations which are not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction.”
The Rent Stabilization Law is similarly amended to exclude from its scope those apartments which are not used by the tenant as his primary residence (L 1983, ch 403, *753 § 41, amdg Administrative Code, § YY51-3.0, subd a, par [1], cl [f], eff April 1, 1984). The discrepancy in effective dates is apparently the result of legislative oversight.
In specifically excluding housing accommodations not used as the tenant’s primary residence from those to which a local declaration of emergency may apply, the Legislature has made clear its intention that regulatory protection should not be available where the tenant’s claim to the subject premises is based on less than the need for a place to call home. This intent is entirely consonant with the public policy sought to be advanced, which is to promote the availability of affordable housing units. The right of a tenant to hold onto an apartment on speculation that, for instance, the building may become subject to a cooperative conversion plan is not within the protection of the rent regulation statutes. Public policy is not advanced by permitting housing units to be held, partly or wholly unutilized, by tenants whose interest is pecuniary gain rather than affordable housing (520 East 81st St. Assoc. v Lenox Hill Hosp., 74 Misc 2d 438, mod on other grounds 76 Misc 2d 892, affd 47 AD2d 513, affd 38 NY2d 525; Benenson v Ritzmann, 203 Misc 768).
The policy of affording protection to housing accommodations utilized as a home (as opposed to protection of a mere possessory interest) is reflected in the provisions of the Omnibus Housing Act. Where the tenant has subleased the premises, the law requires the landlord to wait until the lease expires before commencing a proceeding on the nonprimary residence issue (L 1983, ch 403, § 9, amdg Administrative Code, § YY51-6.0, subd c, par [12]). There is no such requirement where, as here, there is no subletting and no lease currently in effect.
This court is cognizant that in Bolotin v Ameri (supra), a different result was reached. The Supreme Court based its decision on subdivision E of section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code) providing for an application by a landlord to the Conciliation and Appeals Board (CAB) for a determination that no renewal lease need be offered because the premises are not used as the tenant’s primary residence, and upon case law holding that, where the *754 landlord fails to avail himself of this administrative remedy, the tenant is considered a rent stabilization tenant, at least for the purpose of eligibility to purchase his apartment at the insider’s price under a cooperative conversion plan (citing Wissner v 15 West 72nd St. Assoc., 87 AD2d 120). The court then holds that failure to pursue the administrative remedy before the CAB “precludes the landlord from now refusing to offer a renewal lease on the grounds enumerated in Section 54(e) of the Rent Stabilization Code.”
I believe that this conclusion is contradicted by section 5 of the ETPA (L 1974, ch 576, § 5) which provides that the determination will be made “by a court of competent jurisdiction.” Moreover, shortly after passage of the Omnibus Housing Act, the CAB refused to accept any application seeking a determination that premises are not used as a tenant’s primary residence. It seems to me that if a landlord is required to seek an administrative remedy there must be (1) an administrative remedy to be sought and (2) a clear indication that this remedy is exclusive. Given the present state of the law, neither of the conditions may be said to obtain.
At the outset, the issue presented by the instant matter is not appropriate for administrative determination. As stated in 520 East 81st St. Assoc. v Lenox Hill Hosp. (38 NY2d 525, 527, supra): “The proceedings in Civil Court to obtain summary eviction were appropriate to test the applicability of the Rent Stabilization Law of 1969, without first exhausting administrative remedies. Indeed, the Appellate Term was unanimous on this point. But, once it was determined that the Rent Stabilization Law of 1969 was applicable, issues arising under the provisions of that law would be required to be passed upon administratively until that remedy be exhausted.”
Nor may it be said that the remedy afforded by the Rent Stabilization Code remains exclusive. The ETPA applies, inter alia, to “all classes of housing accommodations * * * including but not limited to housing accommodations heretofore destabilized, heretofore or hereinafter exempted from regulation * * * under * * * the City Rent Stabilization Law [or] subject to stabilization * * * under * * * the *755 City Rent Stabilization Law” (New York City Council Resolution No. 276, June 4,1974, eff May 29,1974; emphasis added). The amendment to section 5 of the ETPA (L 1983, ch 403, § 55) provides for judicial determination of the nonprimary residence issue for “all * * * classes of housing accommodations” without reference to the availability or unavailability of an administrative determination.
Finally, where the CAB declines to entertain such cases (even if it arguably still possesses the power) it is fitting for the courts to provide a forum.
Petitioner has attached to its papers ample documentation showing respondent’s primary residence to be at 14 Forest Road, Tenafly, New Jersey, including tax records indicating the respondent declared this house to be his primary residence. More significantly, respondent has reaped the benefits of his statutory tenancy in the form of rental payments in the amount specified in the 1978 lease. Having avoided an increase in rent since 1981, respondent cannot complain, two and one-half years later that he has been wronged. This court concurs with the conclusion reached in Rose v Fisher (NYLJ, Feb. 1, 1980, p 7, col 3) that “Respondent’s attempt to resurrect a claim for a renewal lease, at this late date, as a defense to this proceeding, must be rejected”.
In conclusion, the equities in this case do not rest with the tenant as they may have with the tenant in Bolotin (supra). Mr. Mason, the tenant, would have been better advised to sleep in the apartment in Manhattan, not on his rights. But, instead, he chose to make his own bed in his house in New Jersey. Accordingly, he should continue to sleep there. Upon reargument then, I adhere to my original decision granting summary judgment.