OPINION OF THE COURT
David B. Saxe, J.
May a tenant, who has failed to occupy an apartment as his primary residence, be permitted to “cure” his nonprimary residence status after the landlord has commenced a summary proceeding against him on the grounds that the tenant does not maintain the apartment as his primary residence?
Respondent Armando Drago entered into possession of the premises, apartment 6-D, at 203 East 72nd Street in Manhattan in 1974 pursuant to a written lease with petitioner’s predecessor for a term expiring September 30, 1977. By written rental agreements, the lease was renewed and extended through September 30, 1983. A notice, in compliance with section 60 of the Code of the Rent Stabilization Association of New York City, Inc., offering the tenant a renewal lease was sent by the landlord *178 to Drago, but was not responded to. The tenant’s lease therefore expired and his status thereafter became that of a month-to-month tenant.
In January of 1984 the landlord served a 30-day notice of termination (as required by section 5 [subd a, par (11)] of the Emergency Tenant Protection Act [ETPA, L 1974, ch 576, § 4], as amd by L 1983, ch 403, § 55) and commenced this summary proceeding based on the tenant’s nonprimary residence.
Apparently, prior to his sepáration or divorce approximately eight years ago, Drago resided in the apartment with his wife. Then, he contends, that as part of a divorce agreement, his former wife was permitted to continue to reside in the apartment on her own, it being understood that if she were not to use the premises, that he would be able to retake possession for use as his primary residence. This alleged agreement was not adhered to and an unrelated party, Rosen, currently occupies the premises as an undertenant presumably pursuant to some agreement with Drago’s former wife. This subtenancy, Drago argues, was created without his consent or knowledge. He now seeks, by motion, permission to amend his answer in order to interpose a cross claim for eviction against the named undertenant. The tenant states that this relief is necessary because: “In order for the tenant to cure the defect and utilize the premises as his primary residence, which is his intention, it will be necessary for the tenant to obtain a judgment of eviction as against the undertenant. It is this judgment that is sought in the cross-claim which the tenant wishes to interpose herein.”
The petitioner landlord opposes the tenant’s motion for leave to amend, contending in essence, that nonprimary residence status is not “curable” and consequently, whether or not the undertenant’s occupancy of the premises is illegal as against Drago, it is irrelevant to the petitioner’s rights to possession of the premises. The petitioner has also cross-moved for summary judgment claiming that the primary residence issue may be decided against Drago as a matter of law-.
A mass of documentation is produced which establishes conclusively, together with Drago’s own admissions, that the premises are not currently his primary residence and have not been for at least five years. Drago doesn’t seriously dispute these allegations and there is thus no question that for a period dating back at least five years from the date of the notice of termination, he has not maintained the apartment in question as his primary residence. That being so, the premises are therefore exempt from coverage by the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.; ETPA, L *179 1974, ch 576, § 4 [§ 5, subd a, par (11), as amd by L 1983, ch 403, § 55]). That section exempts from coverage by the Rent Stabilization Law: “housing accommodations which are not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction.”
Nevertheless, the tenant argues that if permitted to evict the undertenant he would resume occupancy of the premises and revert to his former status — that of a primary resident.
The issue that I must therefore decide is whether there exists a right of “cure” with respect to nonprimary residence status.
It is noteworthy that at no place in the tenant’s lease or renewal agreements is there a provision setting forth, as an obligation of the tenancy, that the tenant must maintain the premises as his primary residence. If that were the case, Drago, the prime tenant might be able to rely on RPAPL 753 (subd 4) as amended by chapter 870 of the Laws of 1982 which provides a 10-day grace period before the warrant is issued to enable the tenant to effect a cure. But, the claim here is that the tenancy falls within a statutory exemption from coverage, not that he breached a lease term. Therefore, I hold that RPAPL 753 (subd 4) is inapplicable.
If the tenant here were to be permitted to “cure” his failure to maintain the premises as his primary residence and to resume occupancy, then it would seem that the entire legislative intent in enacting chapter 403 of the Laws of 1983 would be subverted. The Legislature’s intent in enacting these statutes was to preserve scarce New York City housing accommodations for tenants who maintain such dwellings as their primary residence. (See Park South Assoc. v Mason, 123 Misc 2d 750.)
It was, I hold, not the intent of the Legislature, in exempting apartments not used as a primary residence, to give the nonprimary tenant the opportunity to periodically pose as a primary resident, only to conveniently revert to the status of a nonprimary resident during the overwhelming balance of the lease term.
What the prime tenant Drago could cure by virtue of his proposed action against the undertenant is the unauthorized occupation of the apartment by a subtenant. But while unauthorized subletting may be “cured”, this eviction action is not brought to nullify unauthorized subletting but instead is based on nonprimary residence, and as indicated, the determination that Drago has been a nonprimary resident for at least the past five years cannot be rectified.
*180 I am aware of a spate of cases where courts are encouraged to avoid unwarranted leasehold forfeitures (Langham Mansions Co. v Bodine, 117 Misc 2d 925). In such cases, courts have interpreted a tenant’s statutory violation very narrowly (Vesey Realty Co. v Doherty, 120 Misc 2d 721) or blurred the line between nuisance and breach of substantial lease obligation (Harran Holding Corp. v Johnson, NYLJ, Dec. 1, 1983, p 6, col 3 [App Term, 1st Dept]) to avoid forfeiture.
Here, however, the disfavor toward forfeitures is balanced by the clear command of the Legislature to stop protecting tenants who fail to maintain their apartments as their primary residences.
Accordingly, the petitioner’s motion for summary judgment is granted and the prime tenant’s motion is denied. Warrant is to issue forthwith. Five-day stay.