OPINION OF THE COURT
David B. Saxe, J.
Alida D. Camp, formerly an associate attorney at a large Manhattan law firm, having accepted a two-year teaching position at the University of Michigan, attempted to sublet her apartment at 43 West 16th Street, in the Flatiron section of Manhattan to David Sussman, also an attorney. Her landlord refused her sublet request saying she had not demonstrated the requisite intent to return at the conclusion of her sojourn. In a letter to Ms. Camp, the landlord’s attorney opined that the possibility existed that her employment might continue for a period beyond two years, that her fiancé was moving there as well and that it appeared that all her personal property had been removed to Michigan. These factors indicated to the land *396 lord that Ms. Camp did not have the proper animus revertendi (i.e., the intention of returning, Black’s Law Dictionary [Special Deluxe 5th ed 1979]; Mullett v Bradley, 24 Misc 695 [App Term, 1st Dept 1898]), and, not surprisingly, her sublet request was denied.
Nevertheless, Ms. Camp, believing that she had provided the landlord with all the relevant information and believing that she had met the requisite legal standards to be entitled to sublet the premises, placed Mr. Sussman, the undertenant, into possession and moved to Michigan.
The landlord then started a holdover-eviction action against both Ms. Camp and Mr. Sussman based on illegal subletting. The landlord claimed that its denial of her sublet request was proper because Ms. Camp was not maintaining the apartment at the time of the sublet request as her primary residence and further, that “The landlord believes that although you have evidenced an intention of returning to the apartment, that in fact based upon the relevant facts your intention of returning to the apartment may be speculative at best.”
The landlord correctly argues that the new Omnibus Housing Act (L 1983, ch 403, amdg Rent Stabilization Law, Administrative Code of City of New York § YY51-6.0) requires that for a sublet request to be reasonable, the sublessor must establish that (1) at all times he has maintained the unit as his primary residence and (2) that he intends to reoccupy it as such at the expiration of the sublease.
Here, as to the first requirement, the documentation furnished by tenant Camp conclusively demonstrates, as a matter of law, that the apartment was her primary residence at the time of her sublet application.
But, the landlord claims that her present intent to reoccupy the apartment at the end of the lease is illusory, and therefore it was justified in refusing her request. Based on this, the landlord contends that the sublet is invalid and an eviction based upon the illegal subletting may proceed.
It is necessary to emphasize that this is an action predicated upon illegal subletting and not upon a theory of nonprimary residence. Some confusion has arisen since the enactment of the Omnibus Housing Act in delineating between actions grounded upon illegal subletting and those based on nonprimary residence. The reason for the confusion under the Act is apparent — one of the elements required to establish a right to sublet is that the tenant is presently and intends to return as a primary resident to the premises he seeks to temporarily remove himself *397 from. Nevertheless, each ground is legally distinct and should not be confused due to certain common elements. Indeed, there are differences between the two grounds not only with regard to items of proof but also in connection with procedures for the maintenance of such actions and the right of cure available to the affected tenant in the event the landlord is able to prove the particular ground asserted.
To elaborate briefly upon this point, an eviction action based upon illegal subletting may be initiated at any time after the alleged subletting has occurred. Thus, it is permissible for the landlord to commence the action during the tenant’s lease term. Where the eviction action is based upon nonprimary residence, on the other hand, the landlord must wait until the expiration of the tenant’s lease term to commence the action. (L 1983, ch 403, § 9, amdg Rent Stabilization Law, Administrative Code § YY516.0 [c] [12] [c].) In other words, a tenant’s illegal subletting may serve as a predicate for terminating a lease; nonprimary residence does not. Also, a tenant who is found to have illegally sublet his apartment must be given a right to cure this violation; a tenant who has established another residence as a primary residence has no right of cure. (Lufkin v Drago, 126 Misc 2d 177 [Civ Ct, NY County 1984].) It follows, therefore, that a landlord is required, prior to the commencement of a summary proceeding, to serve upon the tenant a notice of cure only if the action is predicated upon illegal subletting; no notice to cure is required with a nonprimary residence case because there exists no right of cure.
Now, with respect to Ms. Camp’s intention to return, it is argued that to deny her sublet request on the ground that the landlord believes that she has no intention to return (which was done here) — when she has said that she does — would permit an eviction to go forward on the basis of the presumed nonprimary residence of the tenant prior to the expiration of the tenant’s lease.
The Administrative Code § YY51-6.0 (c) (12) (c) says you can’t bring an eviction action based upon the nonprimary residence of the tenant until the termination of the lease term. (See generally, Park S. Assoc. v Mason, 123 Misc 2d 750 [Civ Ct, NY County 1984], affd 126 Misc 2d 945 [App Term, 1st Dept 1984], lv denied NYLJ, Jan. 15, 1985, p 6, col 2 [App Term, 1st Dept 1985], lv denied [1st Dept 1985].) So does Lee v Christie (123 Misc 2d 244).
In Lee v Christie (supra) the tenant moved to California in anticipation of her marriage to her flaneé, who resided there, and *398 sublet her apartment. Although the court found that the tenant did not intend to return and that the landlord therefore had authority to deny her the sublet, it dismissed the petition since section YY51-6.0 (c) (12) (c) barred the landlord from maintaining the holdover proceeding based on the tenant’s nonprimary residence during the lease term. The court noted that there are two provisions — one which authorizes a landlord’s refusal to allow a sublet to tenants who have established primary residence elsewhere and the other which prohibits actions or proceedings “based on the non-primary residence” — appear on their face to be contradictory (supra, at p 245).
The court concluded that this apparent ambiguity must be resolved by preventing actions based on nonprimary residence from proceeding until the expiration of the lease, concluding that “these holdover proceedings are based on the nonprimary residence of the tenant as well as on the unauthorized sublet. The instant proceeding is therefore barred until the expiration date of the lease.” (Supra, at p 246.)
This conclusion was found by the court to be consistent with the purpose of the statutory scheme: “Although precluding a holdover proceeding when the tenant has established prime residence elsewhere tends to vitiate subdivision (b), I hold that it is more consistent with the scheme of the statute to read the statutory prohibition of actions or proceedings as governing cases such as this.” (Supra, at p 246.)
In this case, as in Lee, the respondents argue that any other interpretation of the statutory scheme would severely curtail the right of tenants to sublet conferred by Real Property Law § 226-b and the Rent Stabilization Law, Administrative Code § YY51-6.0. They argue, as part of this motion to dismiss (CPLR 3211), that landlords would be able to effect an “end run” around the statute by rejecting sublets based, as here, on their subjective “belief” that the tenant will not return, and attempt to evict the subtenant when the prime tenant may likely be at a distinct location.
Nevertheless, I hold that the language of the applicable statutes involved is clear and precise, and that being so, there is no interpretation for the court to undertake (see, 56 NY Jur, Statutes, § 121).
Contrary to the conclusions reached in Lee v Christie (supra), I hold that the statutory scheme with respect to the provisions dealing with nonprimary residence and illegal subletting is not inconsistent. This holdover proceeding against Ms. Camp is not based on the dual grounds of an illegal sublet and nonprimary *399 residence; it is based only on the unauthorized subletting for which the landlord is permitted to maintain an eviction action presently. As previously noted, the fact that one element of establishing a right to sublet is a demonstration of primary residence status at the end of the sublease (and it is that very element which the landlord here contests) this does not convert this action to one based on nonprimary residence. Thus, although primary residence status may be necessary to effectively sublet, an eviction action based upon failure to prove that the tenant intends to maintain the proper primary residence status at the end of the sublease is one for failure to comply with the sublet strictures of the Omnibus Housing Act.
As a practical matter, the existence of different requirements for these two types of action does not lead to illogical results. Both represent a policy decision by the Legislature to promote the availability of residential housing units precluding protection to a tenant where the tenant’s claim is based on less than the need for a place to call home. (Park S. Assoc. v Mason, 123 Misc 2d 750, supra.) Thus, although an action based upon nonprimary residence may not be commenced until after the lease has expired, as a practical matter, it is not usually in the tenant’s interest if, during the term of the lease, he has in fact moved elsewhere, to leave the apartment dormant while still financially responsible for the payment of rent. Often, rather than surrendering the lease back to the landlord, the nonprimary resident tenant having no intention of returning seeks to promote his own pecuniary or other interests by subletting the premises. With the enactment of the Omnibus Housing Act, however, a landlord need no longer consent to such sublets where the tenant has not demonstrated an intention of returning to the premises as a primary resident at the conclusion of the sublease. Thus, as a practical matter, tenants deserting their status as primary residents now have only two options — to surrender the lease back to the landlord, or leave the apartment vacant while remaining obligated for the rent only until the lease expires at which time the landlord will have no obligation to renew their leases.
Thus, while the landlord cannot proceed to evict the tenant based on nonprimary residence until the expiration of the lease term, the end result of the application of the legislative scheme concerning nonprimary residence and illegal subletting collectively promotes the yielding up of apartments at the time the tenant seeks to permanently move elsewhere. This is exactly the goal which the enactment of the legislation seeks to accomplish.
*400 More troublesome is the tenant’s contention that landlords will frustrate legitimate attempts by tenants to sublet by routinely rejecting proposed sublets based on the subjective belief that the tenant has not established that he has the requisite intention to return at the conclusion of the sublease. A reading of the relevant provision reveals that for the purpose of seeking approval for a sublet, the burden is placed upon the tenant, at least in the first instance, to convince the landlord “that at all times he has maintained the unit as his primary residence and intends to occupy it as such at the expiration of the sublease” (Rent Stabilization Law, Administrative Code § YY51-6.0 [c] [12] [b]). Whether or not the tenant has established this requirement is a question of fact to be determined, like other questions of fact, from all circumstances and facts presented.
The crux of the tenant’s concern is that in every case where a request to sublet is sought, the tenant intends to be physically absent from the premises for a period of time. Thus, the tenant argues that the mere fact that she will be elsewhere for the term of the proposed sublease (which, by its nature, is the case in every sublet request) should not serve as the sole basis for a landlord’s refusal to consent to a sublet.
Here, the tenant and the undertenant completed voluminous questionnaires at the landlord’s request. Nevertheless the landlord refused Ms. Camp’s request stating that “based upon all relevant facts your intention of returning to the apartment may be speculative at best.” Was this belief reasonable?
The tenant has resided in the apartment since 1980 and has worked in New York at a prominent law firm as an attorney. She has accepted an untenured teaching position as an assistant professor at the Graduate School of Business at the University of Michigan for a two-year period. She has stated under oath that she intends to return at the conclusion of this period. Her husband, who also resided with her at the subject premises, is also an attorney and has accepted a clerkship with a judge in Michigan. Since Ms. Camp had maintained the premises as her primary residence; both she and her husband have accepted temporary positions in another State; she has left furniture in the premises; and she has sworn that she intends to return to the premises at the end of the sublease to resume her residence there; it would appear that she has sufficiently established a present intent to return to the premises as a primary resident at the conclusion of the sublet.
Nevertheless, this is a motion to dismiss the petition, not one for summary judgment. Accordingly, it is not proper for the *401 court, at this juncture, to decide the merits of this action; it is only proper to address the sufficiency of the pleading. (Guggenheimer v Ginzburg, 43 NY2d 268 [1977].) As stated previously, the petition states a cause of action for the relief sought and this action may be brought at this time. Whether or not petitioner will be able to ultimately prevail on this summary proceeding should be determined either at trial or on a motion for summary judgment. Thus, the court cannot decide on this motion as a matter of law whether the landlord’s denial of the tenant’s request was unreasonable, whether the landlord waived its rights to object to the respondent’s sublet, or any of the matters raised in the respondent’s counterclaims.
Accordingly, the motion to dismiss is denied.