*241 OPINION OF THE COURT
Thomas A. Dickerson, J.
The plaintiffs (the Mongellis) and the defendants (the Cabrals) are exotic bird lovers. It is their passion for exotic birds, particularly, for Peaches, a five-year-old white Cockatoo, which is at the heart of this controversy.
On January 20, 1991, the Mongellis paid $2,700 to Bird Jungle, a retailer of pet birds, for Peaches, then a baby Molluccan Cockatoo. During the next five years the Mongellis raised Peaches, treated her as a member of their family and routinely brought her to Bird Jungle for grooming. In addition, Mrs. Mongelli is affectionately known as the "Bird Lady” because she regularly shows Peaches and her other birds to children in a local nursery school.
In early 1995 Mrs. Mongelli experienced severe headaches and sought medical treatment. Because of the particular intensity of Peaches’ sounds the plaintiffs decided to board her while Mrs. Mongelli underwent medical testing. The plaintiffs asked Debbie Sorano, the estranged sister of Mrs. Mongelli, to find a suitable couple willing to board Peaches. Ms. Sorano contacted her friends, the Cabrals.
Leonard Cabral is an exotic bird breeder and is in the business of raising and selling exotic birds to Bird Jungle and other pet retailers. The Cabrals also board birds for an appropriate fee. When they were approached by Ms. Sorano it was the Cabrals’ understanding that the Mongellis wanted to give Peaches away because they could no longer tolerate the bird’s screaming.
On April 13, 1995, the Cabrals came to the Mongellis’s home to pick up Peaches. The Mongellis gave Peaches to the Cabrals to be boarded until Mrs. Mongelli’s test results were received. Mr. Sorano, Mrs. Mongelli’s father, was present during the exchange and heard Mrs. Cabral state that she would serve as caretaker and return Peaches upon request. The Cabrals, however, claim that Peaches was a gift which they accepted.
On May 5, 1995, after receiving encouraging test results, Mrs. Mongelli requested that Peaches be returned. On May 11, 1995, the Cabrals informed the Mongellis that they would not return Peaches because she had been a gift.
DISCUSSION
In this matter the plaintiffs seek damages of $3,000 or, preferably, the return of Peaches while the defendants want to keep Peaches because she was a gift which they accepted. *242 Based upon a review of the facts the court finds that plaintiffs have asserted the following cognizable causes of action: (1) replevin and (2) action for recovery of a chattel. The defendants in their counterclaims have asserted the following cognizable causes of action: (1) intentional and/or negligent infliction of emotional distress, (2) slander and (3) breach of quasi contract.

Action To Recover A Chattel

Whether styled as an action in conversion (see, e.g., Republic of Haiti v Duvalier, 211 AD2d 379, 384 [1995] ["The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner”]; General Elec. Co. v American Export Isbrandtsen Lines, 37 AD2d 959 [1971]; 23 NY Jur 2d, Conversion, and Action for Recovery of Chattel, §§ 1-6, 173-176) or replevin (see, e.g., Stone v Church, 172 Misc 1007 [1939] [excellent history of replevin]; International Import & Export Corp. v Epstein, 189 Misc 401, 402 [1947] [" 'The primary object of the action is the recovery of the property itself with damages for the taking and detention, and secondarily the recovery of a sum of money equivalent to the value of the property taken and detained’ ”]; Conti v ASPCA, 77 Misc 2d 61; Malanga v Goldshein, NYLJ, June 30, 1993, at 22, col 3; Saunders v Regeer, 50 Misc 2d 850; Dean v Butler, 166 App Div 367; Sullivan v Ringland, 117 NH 576, 376 A2d 130 [1977]; Julian v Story, 1994 WL 706581 [Ark App 1994]), the Mongellis seek the recovery of a chattel, i.e., Peaches the Cockatoo (see, 23 NY Jur 2d, op. cit., §§ 87-92).

To Whom Does Peaches Belong

From January 20, 1991, when they paid Bird Jungle $2,700 for Peaches, to April 13, 1995 the Mongellis have provided Peaches with a warm, loving home and consistently taken good care of her. The Cabrals claim that on April 13, 1995 the Mongellis bestowed Peaches upon them as a gift.
The Cabrals have the burden of proving that Peaches was a gift (see, e.g., Matter of Kelsey, 29 AD2d 450, 456 [1968] ["burden of proving that a gift was made is upon the one asserting it”]). To establish such a gift, the Cabrals must demonstrate that "there [was] an intent on the part of a donor to give; there [was] a delivery of the property given pursuant to such intent; and there [was] acceptance on the part of the donee” (Matter of *243 Szabo, 10 NY2d 94, 98 [1961]; compare, Saunders v Regeer, 50 Misc 2d 850, 852, supra [transfer of Misty was clearly meant to be a gift]).
The Cabrals have failed to prove that the transfer of Peaches was a gift. Mr. Mongelli, Mrs. Mongelli and her father Mr. Sorano all testified that Peaches was being given to the Cabrals for boarding only until Mrs. Mongelli felt better. Mr. Sorano testified that Mrs. Cabral considered herself a caretaker and would give Peaches back upon request. No documents were introduced which even remotely suggested that Peaches was given or sold to the Cabrals (see, Malanga v Goldshein, NYLJ, June 30, 1993, at 22, col 3 [Sup Ct, NY County 1993], supra [failure "to demonstrate a legal interest in the Dalmatian puppy”]). Indeed, the Cabrals’ position defies the logic of self-interest, i.e., why would anyone give away an exotic bird worth, at least, $2,700? If the Mongellis wanted to be rid of Peaches surely they would have attempted to sell her before giving her away (see, e.g., Saunders v Regeer, 50 Misc 2d 850 [1966], supra [owners of Misty try to sell her first by placing ad in Pennysaver]).
This court finds that the Mongellis own Peaches and have a right to an appropriate remedy.

Equitable Jurisdiction In Small Claims Courts

Having found for the Mongellis what should the remedy be? Although the plaintiffs sued for money ($3,000) or the return of Peaches (replevin) it is clear that they would prefer to have Peaches returned. Peaches is unique and the Mongellis love her and no amount of money is capable of replacing this particular animal. Should this Small Claims Court then order the Cabrals to return Peaches to the Mongellis?
Although defendants did not object to plaintiffs’ replevin action and, in fact, filed their own counterclaim for boarding expenses premised upon being ordered to return Peaches, this court must still consider its subject matter jurisdiction (see, e.g., Maloney v Rincon, 153 Misc 2d 162, 163 [1992] ["A court’s subject matter jurisdiction embraces the categories of litigation which it is empowered to adjudicate and the types of remedies which it is authorized to grant”]).
UCCA 1801 defines small claims as "any cause of action for money only not in excess of three thousand dollars”. On the face of it an order requiring the Cabrals to return Peaches would appear to be beyond the subject matter jurisdiction of this court (see, e.g., Matter of Hellman v Ploss, 46 AD2d 658 *244 [1974] [action seeking declaration of rights in trust fund equitable in nature and beyond the jurisdiction of New York City Civil Court, Small Claims Part]; Mallardi v District Council 37 Health & Sec. Plan Trust, 128 Misc 2d 696 [1985]; Hawk Mtn. Landowners Assn. v Fogelson, 159 Misc 2d 307 [1993] [New York City Civil Court has no jurisdiction to order prejudgment attachment and/or injunctive relief]; Maloney v Rincon, supra [New York City Civil Court has no jurisdiction to enjoin lien sale]). However, some lower courts have assumed jurisdiction over matters equitable in nature (see, e.g., 88 S. Kensico Ave. Assocs. v People, 146 Misc 2d 1037 [1990] [White Plains City Court has jurisdiction to award possession of a premises]; Dean v Butler, 166 App Div 367 [1915], supra [Justice of the Peace decided replevin action involving horse]; Saunders v Regeer, supra [District Court issued injunction preventing sale of Misty pending trial of replevin action]; Conti v ASPCA, 77 Misc 2d 61 [1974], supra [New York City Civil Court decided replevin action and ordered return of Chester the Parrot to ASPCA]).

Substantial Justice Requires The Return Of Peaches

The alternative to ordering the return of Peaches is to dismiss and require both parties to commence their actions anew in a higher court. Such a dismissal would defeat the salutary function of Small Claims Courts which is to do "substantial justice” (UCCA 1804; Hellman v Ploss, supra, 46 AD2d, at 661 [dissenting opn] ["To deny access to the Small Claims Court * * * is to ignore the policy embodied in (Small Claims Court Act) which seeks to provide a simple, informal low cost method of resolving litigation”]; Celona v Celona, NYLJ, Mar. 25, 1994, at 36, col 2 [Yonkers City Ct] ["the goal of Small Claims courts has been to provide a simplified and expeditious mechanism whereby economically unlitigatable claims may be heard without the burden of being bound by statutory rules of practice, procedure, pleading and evidence”]; Siegel, Practice Commentaries, McKinney’s Cons Law of NY, Book 29A, CCA 1801, at 278-279 ["When only a 'small claim’ sum is sought, a plaintiff compelled to resort to the plenary procedures of a supreme court action may in effect be denied the use of the courts altogether * * * It is quite possible to perform an injustice at the jurisdictional threshold by depriving an applicant of the small claims part altogether * * * The mischief of insisting that a plaintiff with a little claim pursue remedies he cannot afford”]).
The court awards the plaintiffs damages of $3,000. Pursuant to UCCA 1804, 1805 (a) the Cabrals may avoid paying this *245 judgment if within 10 days of receipt of this decision, order and judgment they return Peaches, in good health, along with her cage, her bowls and her toys to the Mongellis.
[Portions of opinion omitted for purposes of publication.]