OPINION OF THE COURT
Per Curiam.
Final judgment entered February 6, 1986 reversed, with $30 costs, and final judgment of possession granted in favor of landlord.
The issue before the court is one of primary residence. Respondent Ann Turkel’s last lease expired September 30, 1982, and summary eviction proceedings were commenced in October 1983. The rent-stabilized apartment in question is clearly in the luxury class; it is located on the 36th floor of the Sovereign, in midtown Manhattan, has seven rooms, a terrace, AVz bathrooms and encompasses some 2,800 square feet.
The protracted proceedings below produced a trial record of inordinate length. The salient facts which emerge are as follows. Tenant Turkel moved into the premises with her then husband Richard Harris in 1974. Tenant subsequently worked extensively as a model and actress and, in order to be available for television and movie work, she rented a house in Beverly Hills, California, in 1982. In 1984 Ms. Turkel’s companion took over the lease of the California house; Ms. Turkel remained in residence. The testimony on landlord’s behalf, given by building employees, was to the effect that for the relevant time period tenant was present at the subject apartment for about 20 to 30 days per year. Tenant herself testified that she spent only about 60 to 75 days a year in New York, but maintained that the New York apartment was more substantially furnished than the California house, and that she regards New York as her true home and intends to return when her work permits her to do so. It appears that tenant has paid New York State and city income tax from at least 1980. She has a California driver’s license; has not registered to vote in many years; and has not sought to sublet the premises.
In a bench decision rendered in favor of tenant at the conclusion of trial, the Housing Judge stated, inter alia:
*9 "As I view it, the respondent is in no way, shape or form claiming that she has met the 183 day test. The question then is whether the respondent is domiciled in New York City.
"As I view it, other than the 183 day test, the question of primary residence is basically a question of domicile * * * The question is whether Ann Turkel is domiciled as opposed to residing at 325 East 58th Street, apartment 36E.
"The question is not residence. The question is primary residence or domicile * * * I do not believe that the petitioner has demonstrated a change of domicile from New York City.”
Because we believe that the court below incorrectly applied the law to the facts of this case, we reverse and grant final judgment on the petition. To begin with, the matter was litigated and decided under the provisions of section 54 (E) of the Code of the Rent Stabilization Association of New York City, Inc. That section, after identifying some obvious considerations to be weighed by the Conciliation and Appeals Board (the administrative body which formerly had exclusive jurisdiction over nonprimary residence matters) in determining an individual’s primary residence, further provided that, in any event, a prerequisite of primary residence was either domicile in the New York City premises or residence at the premises for at least 183 days, plus proof of filing of a New York City income tax return at the claimed primary residence for the most recent preceding taxable year. The currently effective Rent Stabilization Code, as of May 1, 1987, merely provides that an owner may refuse to renew a stabilized tenant’s lease, without order of the Division of Housing and Community Renewal (successor to the CAB), if "[t]he housing accommodation is not occupied by the tenant * * * as his or her primary residence, as determined by a court of competent jurisdiction” (Rent Stabilization Code § 2524.4 [c]).
Whether the instant case is decided under the more specific formulation of primary residence set forth in the former code, or under the more general one set forth in the present code, we think it incorrect to decide these cases by equating primary residence with the concept of domicile. The two are not synonymous. Thus, one may be domiciled in another State, reside predominantly in a New York City apartment, and be viewed as a primary resident of that apartment. On the other hand, a tenant’s domicile may be in New York City, but if he is residing elsewhere almost all of the time, year after year, it would be illusory to maintain that the New York apartment is *10 the tenant’s primary residence. A tenant’s domicile may be a factor to consider, particularly in the situation where a tenant spends little time in New York but is not shown to have any other primary or permanent residence (see, Coronet Props. Co. v Brychova, 122 Misc 2d 212, affd 126 Misc 2d 946 [App Term, 1st Dept]; 530 Second Ave. Co. v Gold, NYLJ, June 28, 1985, at 12, col 1 [App Term, 1st Dept]). But that is, of course, quite different from saying that because an apartment is an individual’s domicile it is also necessarily his primary residence. As we have recently stated, "The issue is not so much one of legal domicile as it is one of primary residence. We take primary residence to mean an ongoing, substantial, physical nexus with the controlled premises for actual living purposes — which can be demonstrated by objective, empirical evidence” (Emay Props. Corp. v Norton, 136 Misc 2d 127, 128-129).
It is fairly clear that in 1982 Ms. Turkel made a voluntary decision to remove to California to further her career aspirations. The fact that income tax returns were filed from the New York address does not, in the absence of other evidence indicating a significant New York presence, rebut the totality of proof that she has, in fact, been residing primarily and centrally in Beverly Hills for the last several years. Essentially, the Housing Court so found, but it declined to give judgment to the landlord because landlord had not also proven that tenant had changed her domicile from New York to California. We are not persuaded that landlord was required to meet that burden. Domicile is, inter alia, a state of mind, and to the extent tenant may honestly intend to return to New York at some indeterminate time in the future, that is not sufficient to retain stabilization rights in the face of objective evidentiary proof that primary residence is lacking. An acknowledged purpose of the Rent Stabilization Law is to secure from eviction, during a period of scarcity in rental accommodations, those tenants who actually require and actively use their apartments for dwelling purposes. Persons such as the tenant herein, who live outside New York but who reserve a New York address for secondary purposes of convenience and occasional use when they visit the city, cannot fairly cloak themselves with the protections of extended stabilized status.
With the reversal of the final judgment, the award of attorney’s fees to the tenant necessarily falls. Pending further appellate advice, this court adheres to the view that attorney’s fees may not be recovered by the prevailing party in nonpri *11 mary residence proceedings (Cier Indus. Co. v Hessen, NYLJ, Jan. 13, 1987, at 6, col 3 [Ostrau, J., dissenting]; Eleven Waverly Assocs. v Waering, 134 Misc 2d 1093 [Ostrau, J., concurring]).
Hughes, P. J., Sandifer and Ostrau, JJ., concur.