BRIAR HILL APARTMENTS Co., Respondent, v JOSEPH H. TEPER-
MAN, Appellant.

First Department, April 4, 1991

## APPEARANCES OF COUNSEL

*Paul A. Batista, P. C.,* for appellant.

*Jeffrey R. Metz* of counsel *(Paul N. Gruber* with him on the brief; *Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

WALLACH, J.

In this holdover proceeding seeking to evict respondent tenant from a rent-stabilized apartment, Civil Court awarded possession in favor of petitioner landlord and Appellate Term affirmed on the ground that the apartment in issue, to wit, apartment 210 of the building known as 600 West 246th Street in the Borough of the Bronx, was not respondent's primary residence. At the time of trial, respondent had been the tenant of record for apartments 204 and 210 in the building for 28 years. The lease to the apartments had been renewed continuously from 1960 until 1986 when petitioner refused to offer a lease renewal for apartment 210 and commenced this proceeding.

■ Appellate Term concluded, and we agree, that the non-contiguous apartment No. 210 "was used only for limited

purposes of convenience and that the true primary residence was tenant's three bedroom apartment at number 204." It is undisputed that apartment 210 was a one-bedroom apartment at the end of a common hallway, separated from apartment 204, the basic abode of the tenant and his wife, by five intervening apartments.

The most significant item of evidence supporting the conclusion that neither the tenant, Dr. Joseph H. Teperman nor any members of his family, nor for that matter, anyone else, resided in apartment 210 was the public utility records of the Consolidated Edison Co. showing that the electrical consumption during the relevant period was virtually nil. The tenant maintains that the trial court committed error when it received these records under CPLR 4518 (a).

■ ■ As part of its direct case petitioner landlord called Francis Hogan, Consolidated Edison's senior customer service representative, who pursuant to subpoena produced the electrical usage records during the only relevant period for apartments 204 and 210 at 600 West 246th Street in the Bronx. The records consisted of computer printouts that Mr. Hogan testified were "kept in the ordinary course of Consolidated Edison's business." It is true that landlord's counsel omitted specifically to elicit the two other criteria of CPLR 4518, namely, that it was in the ordinary course of Consolidated Edison's business to make these records or that the entries were made contemporaneously or a reasonable time thereafter. However, no other inference can possibly be drawn from Mr. Hogan's testimony read as a whole, and tenant's counsel made no objection on such grounds, appropriately so since these deficiencies would be clearly subject to immediate cure. Tenant's only objections rested upon (i) the best evidence rule; (ii) the fact that the witness himself had not made the entries; and (iii) that the records had been generated, as the tenant puts it, "solely for the purpose of the trial of this litigation", rather than in the "ordinary course of business". We find no merit with respect to any of these contentions.

■ Insofar as the best evidence rule was invoked, the tenant's argument was clearly self-defeating: tenant urged the primary (best) evidence would be the original electricity bills sent to Dr. Teperman. It then appeared that landlord had served a notice on Dr. Teperman to produce these bills, with which he had failed to comply. Thus, either solely through inaction or evasion by the tenant himself, the so-called "pri-

mary evidence" was unavailable at the time of the offer.* Therefore, the foundation was fully laid (assuming the best evidence rule was at all applicable—we view it as irrelevant) for the admission of the records since the absence of the purported "original" was satisfactorily accounted for (see, Richardson, Evidence § 568 [Prince 10th ed]).

■ To the extent that tenant showed that Mr. Hogan had not fed the original data into the computer, that fact provided no basis for rejecting the records; CPLR 4518 (a) disposes of that suggestion as follows: "All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility."

■ The third aspect of tenant's argument, i.e., that the records, by being responsive to subpoena, somehow lost their character as business records, seems to us to lack sufficient appreciation of the benefits conferred upon the world in general, and litigation in particular, by modern computer technology. Mr. Hogan stated that he obtained the records from the company data bank by pressing the appropriate key or keys on his office computer. This would appear to be no different in its legal consequences from normal practice in the precomputer age where business records reposed in a steel file instead of a mainframe computer data bank, and would be subject to retrieval by a file clerk and placed on Mr. Hogan's desk manually, rather than electronically.

With the proof of electrical nonconsumption properly in the case, it fell to the tenant to explain just how it was that he and his family "resided" in apartment 210 almost entirely without electricity. In fairness to him, he did not shirk the burden. He testified that he rested in the apartment for 250 days in 1986 while recuperating from an accident, but he never watched television, preferring to use a portable radio. This preference also applied to another three-month disability period. He would dictate legal papers for his law practice, but the machine was battery powered. There was an electric clock and refrigerator on the premises but neither was plugged in. Under cross-examination he produced electrical bills for 1988 which showed an average charge of $5 per month except for one two-month period of about $15 per month.

Bruce Teperman, defendant's son and law partner, testified

---

* Dr. Teperman later produced some of these records in the course of his own case.

that in January 1984 and during the summer of 1985 he studied for the Bar examination in apartment 210, but this was in the daytime when artificial light was not needed. Although he did not know whether the apartment was equipped with an air-conditioner, he knew he never used one there. He remembered leaving apartment 210 one time on July 4th to watch fireworks, but this understandably required no electric usage. Other testimony supplied by the Tepermans was similarly lacking in pertinence or persuasive force.

■ In view of this quality of proof it is impossible to differ with the conclusion of the trial court that if prior to 1984 the tenant and his family ever did maintain apartment 210 as an integral part of their residence, they never did so after that date. Surely no appellate court, without the benefit of hearing and seeing the witnesses, could make a finding to the contrary.

The situation here is fully distinguishable from our decision in *Sharp v Melendez* (139 AD2d 262, *lv denied* 73 NY2d 707) where the proof showed that landlord's predecessor in title actively solicited the tenant's leasing of a noncontiguous apartment for the expansion of tenant's living arrangements. Here, mere passive knowledge by the landlord of tenant's pre-1984 activities in the apartment cannot be escalated to the level of waiver, which constitutes the intentional relinquishment of a known right *(United Commodities-Greece v Fidelity Intl. Bank,* 64 NY2d 449, 457).

What we said with respect to nonprimary occupancy of rent-regulated residential space in *Cier Indus. Co. v Hessen* (136 AD2d 145, 150) is equally applicable here. "A tenant of a stabilized apartment who maintains a primary residence elsewhere, and also seeks to retain the stabilized apartment for convenience or for considerations of personal gain, is not one who is a victim of the housing crisis but may rather be said to be a contributing and exacerbating factor in the continuation of the critical shortage of affordable apartments." In analyzing the proper application of statutes which regulate the rent that a landlord may lawfully charge a tenant, courts have said that "regulatory protection should not be available where the tenant's claim to the subject premises is based on less than the need for a place to call home. * * * Public policy is not advanced by permitting housing units to be held, partly or wholly unutilized, by tenants whose interest is pecuniary gain rather than affordable housing" *(Park S. Assocs. v Mason,* 123 Misc 2d 750, 753, *affd* 126 Misc 2d 945).

The policy of the rent control and stabilization laws was clearly stated by the Appellate Term in *Sommer v Ann Turkel, Inc.* (137 Misc 2d 7, 10) as follows: "An acknowledged purpose of the Rent Stabilization Law is to secure from eviction, during a period of scarcity in rental accommodations, those *tenants who actually require and actively use their apartments for dwelling purposes.*" (Emphasis added.)

■ Since the tenant's proof fell far short of showing either "requirement" or "actual use" of apartment 210 "for dwelling purposes", it did not constitute any part of his primary residence.

We have examined the other contentions raised by tenant and find them without merit.

Accordingly, the order of the Supreme Court, Appellate Term, First Department, entered on February 22, 1990, which affirmed a final judgment of the Civil Court, Bronx County (Janice Bowman, J.), entered on or about June 14, 1989, which, after a bench trial, awarded possession of the apartment to petitioner-respondent Briar Hill Apartments Co., should be affirmed, without costs.

ROSENBERGER, J. P., KASSAL and SMITH, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered on February 22, 1990, unanimously affirmed, without costs.