OPINION OF THE COURT
Arthur R. Scott, Jr., J.
Petitioner Wonko Realty Corp. (hereinafter Wonko) commenced this summary holdover proceeding to recover possession of apartment 5C (hereinafter subject apartment) at the building known as and located at 120 96th Street, Brooklyn, New York (hereinafter subject building).
The facts of this case are as follows: respondent Virginia Cady (hereinafter Cady) presently resides at the subject build *1047 ing pursuant to a lease to apartment 2M commencing in or about 1966. Her sister, who died in or about February 1990, resided in the subject building in apartment 5C (the subject apartment) pursuant to a lease with petitioner. At trial Cady testified that she and her late sister were very close and as a result shared both apartments as though they were one apartment. Respondent further testified that they ate every meal together and shared household and daily living expenses. Both sisters carried keys to both apartments. The lease to the subject apartment expired on August 31, 1990. The estate of Mary Dreisch remains in possession of one apartment, although they have claimed no entitlement to a renewal lease in the instant proceeding, it is Cady, sister of the deceased tenant, who is making a claim to a renewal lease.
In the first instance although Cady may have considered the subject apartment to be as much her own as apartment 2M, the subject apartment was in her sister’s name. The lease to apartment 2M was in Cady’s name only. Neither Cady nor her sister ever requested of petitioner that each other’s name be added to both leases. Cady produced no canceled checks at trial showing that she paid the rent for the subject apartment; and did admit that she never paid the rent herself for the subject apartment. The utilities for each apartment were listed in the leaseholder’s name. Cady’s tax returns identify apartment 2M as her only primary residence. Cady even listed apartment 2M as her only primary residence on a DHCR reduction of services complaint submitted in 1986.
This court maintains that each piece of documentary evidence produced at trial proves that Cady took apartment 2M as her primary residence and the subject apartment was Mary’s residence. In Sommer v Ann Turkel, Inc. (137 Misc 2d 7, 10 [App Term, 1st Dept 1987]), the court discussed the standards for primary residence, holding that we " 'take primary residence to mean an ongoing, substantial, physical nexus with the controlled premises for actual living purposes —which can be demonstrated by objective, empirical evidence’ ”. The court in Sommer further discussed the purpose of the Rent Stabilization Law, stating that: "An acknowledged purpose of the Rent Stabilization Law (Administrative Code of City of New York, tit 26, ch 4) is to secure from eviction, during a period of scarcity in rental accommodations, those tenants who actually require and actively use their apartment for dwelling purposes.” (Supra, at 10.)
This court finds that Cady failed the Sommer test with *1048 regard to her failure to submit any “objective, empirical” evidence. However, what this court finds even more decisive in determining this case is that Cady already has a home, namely, apartment 2M. She does not need the subject apartment, and in fact, would only have the benefit of a windfall if she was granted a renewal lease to the subject apartment. Clearly, the legislative intent behind the Rent Stabilization Law and Rent Stabilization Code (9 NYCRR parts 2520-2530) would not be served by granting possession of the subject apartment to Cady. In Park S. Assocs. v Mason (123 Misc 2d 750, affd 126 Misc 2d 940 [App Term, 1st Dept 1984]), a nonprimary residence proceeding, the court construed the legislative intent of requiring primary residence as a condition for rent stabilization coverage by stating that “the Legislature has made clear its intention that regulatory protection should not be available where the tenant’s claim to the subject premises is based on less than the need for a place to call home. This intent is entirely consonant with the public policy sought to be advanced, which is to promote the availability of affordable housing units. * * * Public policy is not advanced by permitting housing units to be held, partly or wholly unutilized, by tenants whose interest is pecuniary gain rather than affordable housing”. (123 Misc 2d, supra, at 753.)
The instant proceeding is a case of first impression since the cases recently decided by the courts dealing with dual primary residence have involved a landlord’s attempt to recover possession of one or two or more apartments from a tenant where both individual leaseholders are still alive. Cady is attempting to get two rent-stabilized leases in her own name after the death of her sister.
The case of Page Assocs. v Dolan (NYLJ, Nov. 8, 1984, at 4, col 2 [App Term, 1st Dept]) is distinguishable from the instant proceeding for the reason set forth above. In Dolan, the court held that two noncontiguous apartments occupied by a woman and her nephew were used as one primary residence. However, in Dolan, the tenant was the leaseholder of both apartments which is clearly a departure from the instant case. Additionally, in Dolan, Ms. Dolan was able to prove that she needed both apartments in order to have a home in which she was capable of living. Thus, allowing her to maintain both as one dual primary residence furthered the legislative intent of the Rent Stabilization Code. Cady testified at trial that she moved from a larger apartment in the subject building to apartment 2M because she didn’t need the extra space in the *1049 larger apartment living alone. Testimony was also offered at trial by a building porter that he observed Cady and other members of her family after Dreisch’s death cleaning out the subject apartment with extra large trash bags that he personally gave to Cady.
The case of Tracy Assocs. v Faust (NYLJ, Apr. 15, 1987, at 14, col 2 [Civ Ct, NY County]) contained similar facts as in Dolan (supra) in that Faust had leased two apartments in the same building. Faust is also distinguishable, like Dolan, from the facts of the instant proceeding. Moreover, in Faust the rent bills for both apartments were consolidated into one and delivered to only one apartment. The court in Faust also spoke of the tenant’s need for both apartments as a dual primary residence as in Dolan. This is clearly not the case with Cady. The claim cannot be made that she needs both apartments as she lives alone. The policy of the Rent Stabilization Law in a city with a less than 2% vacancy rate for residential apartments would not be served by awarding apartment 5C to Cady when she already has a lease to apartment 2M in the same building.
The Rent Stabilization Code itself does not support Cady’s claim to the subject apartment. Section 2523.5 of the Code at subdivision (b) (1) states that: "if an offer is made to the tenant pursuant to the provisions of subdivision [2523.5] (a) * * * and such tenant has permanently vacated the housing accommodation, any member of such tenant’s family, as defined in section 2520.6 (o) of this Title, who has resided with the tenant in the housing accommodation as a primary residence * * * from the inception of the tenancy or commencement of the relationship shall be entitled to be named as a tenant on the renewal lease.”
Cady is an undisputed member of Dreisch’s "family” as described in the Code. However, no renewal lease has been offered since Dreisch died, and Cady did not live in the subject apartment as her primary residence since the inception of her late sister’s tenancy or the commencement of their relationship. Thus, this provision of the Rent Stabilization would never entitle Cady to succeed to the subject apartment.
The court additionally finds persuasive testimony offered at trial that Cady did not consider apartment 2M as her primary residence. After Dreisch died, Cady listed her mailing address on a second DHCR complaint as apartment 5C, however, she also listed her telephone number as that of apartment 2M, *1050 where, she conceded at trial, she could be reached more easily. Cady’s brother, John Cady, testifying in support of his sister, stated under cross-examination that he wanted apartment 5C "for his family.” The court finds this testimony quite detrimental to Cady’s case that she considered apartment 5C as her primary residence or that she needed the additional apartment for her own use.
Based on the foregoing, this court awards a final judgment of possession to petitioner as against both the estate of Mary Dreisch and Virginia Cady.
The warrant to issue forthwith. The execution of the warrant will stay until May 31, 1991.