Suarez, P.J.
(dissenting). I respectfully dissent. The issue on *81 this appeal is whether landlords established at trial that tenant Martha Steele did not maintain an ongoing, substantial physical nexus to the subject apartment for actual living purposes. I find that landlords met their burden, that Steele failed to refute landlords’ evidence and that a final judgment of possession should be awarded in favor of the petitioners.
Contrary to the position advanced by the majority, a fair interpretation of the evidence establishes that Steele did not primarily reside at the subject East 12th Street, Manhattan, apartment (majority op at 79). The evidence establishes that Steele did not maintain an “ongoing, substantial, physical nexus with the controlled premises for actual living purposes” (Berwick Land Corp. v Mucelli, 249 AD2d 18 [1st Dept 1998] [internal quotation marks omitted]) that would justify affording the tenancy continued protection to reap the benefits of this rent-controlled ($133.76 per month) apartment. The trial court’s determination to the contrary is against the weight of the evidence.
Landlords’ trial evidence overwhelmingly established that since September 3, 1976, Steele primarily resided in a home located at 2203 Race Avenue, in Medford, Suffolk County, New York, which she owns with Harry Robinson, her companion of many years. She listed the Race Avenue address on various important documents, including her driver’s license, the registrations for two automobiles, the multiple dwelling registration for the Bronx County property, a deed transferring the Bronx property to a corporation formed by Steele and Harry Robinson, a deed for property located in the State of Florida, an E-ZPass application, an MV-104 accident report, the surrender of motor vehicle license plates, an American Express account (opened in 1982 and canceled in 1995) and several credit card accounts. Almost all of the purchases charged on these accounts were made in Suffolk County. Most significantly, Steele filed a petition in bankruptcy in the United States District Court for the Eastern District of New York (which is the jurisdiction for the Race Avenue premises) as opposed to filing in the Southern District where the subject apartment is located. Schedules A and J of the bankruptcy petition, pertaining to debtor’s interest in real property and monthly obligations for rent, make no mention of the subject rent-controlled apartment. These oversights can hardly be attributed to “inattention” and “carelessness,” as does the majority and as the trial court did. Trial evidence was also adduced to show that Steele had not filed New York *82 City resident income tax returns, nor had she voted from the subject apartment for a prolonged period of time prior to the within proceeding. Steele reregistered to vote and changed the address on her driver’s license to the subject apartment only after the termination notice was served.
The most compelling trial testimony came from Darlene Martin, who lived across the street from Steele’s Race Avenue home from 1996 to 1998, and who is depicted with Steele in photographs taken by a private investigator. Ms. Martin’s testimony disclosed that she saw Steele at the Race Avenue premises on a daily basis while she (Martin) would be waiting with her children for the school bus and also on a daily basis for about two months when her (Martin’s) boyfriend was hired to paint a rental property owned by Steele located around the corner from the Race Avenue home.
Against this overwhelming documentary and testimonial evidence, and contrary to the findings of the trial court, Steele’s own evidence was woefully inadequate to demonstrate that she actually lived in the subject apartment during the years prior to service of the notice of termination. Contrary to the statement of the majority that “ [significant also is the landlords’ failure to present any testimonial or documentary evidence regarding the tenant’s telephone or utility usage at the subject apartment” (majority op at 80), Con Edison bills in the name of Steele and her son were produced only for 1997, while telephone bills were produced only for 1996 and these bills reflected only minimal usage. (See Briar Hill Apts. Co. v Teperman, 165 AD2d 519 [1st Dept 1991].) Moreover, Steele failed to use any gas for several months in 1997. The failure to submit bills for preceding years as well as the failure to vote or file New York City resident income tax returns for several years was never explained. The failure to produce this important evidence entitles us to infer either that such evidence does not exist or that it would not support Steele’s assertion that she primarily resides at the subject apartment and to draw such inferences against her as the landlords’ evidence permits. (See Morano v Westchester Paving & Sealing Corp., 7 AD3d 495, 496 [2d Dept 2004].) Nor was the fact that the Con Edison bill was in the name of Steele’s son dispositive of the son’s claim that he resided at the apartment with his mother until 1997. The interested, conflicting trial testimony of Steele’s omnipresent son can only be viewed as unreliable. While claiming to have lived at the subject apartment with Steele from 1989 to 1997, he also claimed, in a writ *83 ing dated February 16, 1999 made in connection with his failed attempt to acquire succession rights to his grandmother’s apartment, 3C, at the same 325 East 12th Street premises, that he moved from Steele’s apartment 2E to apartment 3C, in November 1996 and has lived there ever since. While claiming to be living in apartment 3C, he also testified that in 1997 he lived at Steele’s Bronx multiple dwelling, while at the same time maintaining a residence, since 1995, at 50 West 97th Street, New York City, which is the address listed on his driver’s license.
Upon exercising this appellate court’s broad power to review the evidence (see Universal Leasing Servs. v Flushing Hae Kwan Rest., 169 AD2d 829 [2d Dept 1991]), a result different from that of the trial court should be reached based upon landlords’ overwhelming evidence, since Steele did not demonstrate an “ongoing, substantial, physical nexus with the controlled premises for actual living purposes ... by objective, empirical evidence.” (Emay Props. Corp. v Norton, 136 Misc 2d 127, 129 [App Term, 1st Dept 1987].) Moreover, there is substantial evidence that her use of the Race Avenue property was not merely occasional. “The landlord clearly met its evidentiary burden in this case by establishing, through preponderant evidence, that during the relevant time period the tenant did not actively use the regulated apartment premises for dwelling purposes and instead regularly lived . . . elsewhere (see, 45th St. Assocs. v Spence, 180 Misc 2d 93 [App Term, 1st Dept 1999]).” (Emel Realty Corp. v Carey, 188 Misc 2d 280, 282 [App Term, 1st Dept 2001].) It is noteworthy that the Race Avenue address was used in connection with the Bronx property, while a New York City post-office box address was used in conjunction with Steele’s application for housing assistance payments for the two rental properties located in Medford.
The majority found that the documentation showing Steele’s address at the Race Avenue, Long Island, address was not dis-positive and did not preponderate over Steele’s credited testimonial evidence (majority op at 80, citing 23 Jones St. Assoc. v Keebler-Beretta, 284 AD2d 109 [1st Dept 2001]). However, 23 Jones St. is distinguishable from the within case both as to the law and the facts, as it was a succession case, where the respondent married the tenant of record and then resided with him at the subject premises until his death SVa years later. The respondent presented documents, specifically, voter registration records and correspondence to the managing agent, wherein the agent was notified of respondent’s marriage to the tenant of record and that she occupied the apartment.
*84 Nor does the record in this case warrant a finding in Steele’s favor based on the lack of countervailing testimonial evidence “from building staff or neighbors regarding how often [tenant] is seen at the subject premises” (majority op at 79), where, as indicated, the documentary and testimonial evidence presented by landlords that Steele lives elsewhere is overwhelming. No disinterested witness testimony was presented to establish Steele’s occupancy of the subject apartment as her primary residence. Moreover, Steele’s own trial testimony does little to support her claim. When asked to describe the spartan furnishings in the small three-room apartment she purportedly occupied with her son, she replied that the bedroom contained “[a] high-riser, and I’m thinking a dresser, the closet, might have been a TV” and that in the living room “[w]e had, I think it was . . . there’s a table with a computer, bookcases, the books, and I guess the high-riser . . . .” Although certain documentation, including the address listed on tax returns, is not dispositive (Patchin Place v Fox, 3 Misc 3d 127[A], 2004 NY Slip Op 50327[U] [App Term, 1st Dept 2004]), here the overwhelming evidence clearly preponderates over tenant’s evidence. While the majority asserts that particular items are “equivocal” and “of little probative value” (majority op at 80), the totality of the overwhelming evidence demonstrating that Steele does not primarily reside at the subject apartment mandates a judgment in landlords’ favor.
The judgment should be reversed, and landlords should be granted a final judgment of possession.
McCooe and Schoenfeld, JJ., concur; Suarez, EJ., dissents in a separate memorandum.