McCooe, J.
(dissenting). This is the second proceeding be *65 tween these parties regarding the subject apartment to come before this panel. The first proceeding was an illegal sublet where the issue was whether the tenant Escoffier contemporaneously resided at the subject apartment with the occupant. This primary residence proceeding raises essentially the same issue: whether the landlord has established that Escoffier did not maintain an ongoing, substantial, physical presence at the subject apartment for actual living purposes (East End Temple v Silverman, 199 AD2d 94 [1st Dept 1993]). Simply stated, the issue in both cases is whether Escoffier was actually living in the subject apartment.
The trial court (Lau, J.) in the first proceeding, in a well-reasoned fact-laden 13-page opinion, found that Escoffier was not living in the subject apartment (Hudson St. Equities Group, Inc. v Escoffier, Civ Ct, NY County, Feb. 26, 2002, Lau, J., Index No. L&T 106066/2000, revd on other grounds 2003 NY Slip Op 51213[U] [App Term, 1st Dept 2003]). I take judicial notice of that decision and adopt it, together with my reading of this record, as the basis of this dissent (Matter of Allen v Strough, 301 AD2d 11 [2d Dept 2002]).
Judge Lau’s opinion reads in pertinent part:
“The court finds that Petitioner credibly sustained its burden and established its prima facie case. Petitioner’s agent and superintendent testified credibly that respondent was seen sporadically at the Apartment and that others were seen in occupancy of the premises on a daily basis; more particularly, petitioner established that Norman Lawrence was the most recent occupant of the premises, and that Esoffier [szc] was not seen at the Apartment for extended periods of time while Lawrence lived there. The testimony of Esoffier [szc], considered in juxtaposition to the extensive documentary evidence, leads this court to conclude that Escoffier has been, at most, an occasional visitor to the Apartment, coming from the Mobile House ... By his own admission, Escoffier spent periods of several years living away from the Apartment, first as a student of podiatric medicine in Ohio and as a resident in podiatric surgery in Alabama . . .
“The evidence of Escoffier’s regular, ongoing connections to the Mobile House, his extended absences from the Apartment, his almost universal use of the address of the Mobile House as his home address, *66 and the fact that his automobile insurance policies are characterized as policies for employees of a bank located in Mobile, greatly outweigh any evidence of his connection to the Apartment.”
While the issue of primary residence was not before Judge Lau, her findings establish that there was no ongoing physical presence at the subject apartment by Escoffier and that the subject premises were occupied by another or others, which is a factor to be considered in determining primary residence.
The majority excuses the tenant’s admission that he spent years away from the apartment (1980-1984 in Ohio and 1987-1990 in Alabama). These absences, apart from occasional visits to New York, continued until the commencement of the illegal sublet proceeding when Escoffier attempted to effect a cure by returning to the apartment. Nor should his changing the address on his driver’s license and registration on his two cars from the Mobile address to the New York address at the time of the commencement of the illegal sublet proceeding benefit him.
The majority in the illegal sublet proceeding stated: “While tenant does not dispute that he owns a home in Mobile and regularly travels there for medical reasons” (at 2003 NY Slip Op 51213[U], *3). The majority here, as did the trial court, accepted Escoffier’s testimony that his house was in a “dilapidated condition” containing little furniture. I assume that the inference that they seek to draw, which I do not, is that he would not live in that house. The admitted fact is that he did. Nor do I accept his testimony that the reason for his continued absence from the apartment was to receive medical treatment in Alabama. He testified that after 1990 he went to Alabama “either once a month or once every two months” for eight or nine years for rehabilitation generally taking a bus which required a traveling time of between 23 and 37 hours one way. His testimony that he traveled that distance on a regular basis to receive medical attention is incredible. His long-term absence (more than 10 years) should not be excused (Claridge Gardens v Menotti, 160 AD2d 544 [1st Dept 1990]).
The landlord does not have to establish that Escoffier lived in the Mobile house. It has to and did establish that the subject apartment is not his primary residence (Glenbriar Co. v Lipsman, 5 NY3d 388 [2005]; Toa Constr. Co. v Tsitsires, 2003 NY Slip Op 50651[U] [App Term, 1st Dept 2003, McCooe, J., dis *67 senting in part], mod 4 AD3d 141 [1st Dept 2004]; Sommer v Ann Turkel, Inc., 137 Misc 2d 7 [App Term, 1st Dept 1987]).
The judgment should be reversed and possession granted to the petitioner.
Davis and Gangel-Jacob, JJ., concur; McCooe, J.E, dissents in a separate memorandum.