OPINION OF THE COURT
Per Curiam.
Final judgment, entered July 7, 2005, reversed, with $30 costs, and final judgment awarded to tenant dismissing the petition.
This holdover summary proceeding seeks possession of tenant’s stabilized apartment — a single-room occupancy unit located at 400 West 57th Street, Manhattan — on the ground of nonprimary residence. While acknowledging, as it must, that tenant does not maintain a separate residence anywhere else, landlord nonetheless seeks to evict the tenant from his home of 35 years based upon the sad reality that tenant, who is unemployed and a recipient of SSI disability benefits, spends nearly all of his time outdoors, in what was described at trial as a “safe zone” located within a 10-block radius of the building premises, where tenant sleeps in Central Park or “on a stoop somewhere.” In this connection, the trial record painfully discloses that tenant’s aberrant, “homeless” lifestyle is the product of deep, long-standing emotional difficulties, fueled either by a panic disorder from which tenant undisputedly suffers, substance abuse problems, or both. It deserves mention that the genuineness and severity of tenant’s emotional problems was confirmed by the logistical accommodation fashioned by Civil Court in allowing tenant’s trial testimony to be elicited at the Park Central Hotel located on Seventh Avenue between 55th and 56th streets, a location within the so-called safe zone surrounding the subject premises.
In the particular circumstances of this case, and considering the undisputed facts that tenant at all times kept his clothing and personal belongings in the apartment and received mail there, we find unavailing landlord’s contention that tenant relinquished or abandoned the unit as his primary residence. While the substantial emotional difficulties daily faced by tenant appear to have prevented him from actively using the apartment,* tenant’s absences must be deemed excusable for purposes *67 of nonprimary residence analysis, at least on this record which shows that “there was no abandonment of the premises or establishing of any new residence” (Katz v Gelman, 177 Misc 2d 83, 84 [1998]).
Nor are we prepared to equate the peculiar, nay bizarre, habits of this unfortunate tenant with the type of “misuse of rent-regulated space” (Cox v J.D. Realty Assoc., 217 AD2d 179, 185 [1995]) to which primary residence requirements are addressed. Granted, “[p]ublic policy is not advanced by permitting housing units to be held, partly or wholly unutilized, by tenants whose interest is pecuniary gain rather than affordable housing.” (Briar Hill Apts. Co. v Teperman, 165 AD2d 519, 523 [1991], quoting Park S. Assoc. v Mason, 123 Misc 2d 750, 753 [1984], affd 126 Misc 2d 945 [1984].) However, such public policy concerns do not require us to sustain the needless eviction of this seriously disturbed tenant, upon what in essence would be a judicial finding that tenant maintains his primary residence on a park bench.
Exercising our authority to review the record developed at the nonjury trial and render the judgment warranted by the facts (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492 [1983]), we reverse the possessory judgment awarded to landlord and dismiss the petition.

 Tenant’s testimony that, in addition to living on the street, he stays inside his apartment, without venturing out, for months at a time, was rejected *67 by the trial court as incredible, and we do not second-guess the court’s finding on that issue.