OPINION OF THE COURT
Per Curiam.
Final judgment, entered on or about December 10, 2012, reversed, with $30 costs, and final judgment of possession granted in favor of landlord on the holdover petition.
Tenants Judith Stollerman and Danielle Sandow have been the tenants of record of uncombined rent-stabilized apartments 3 and 4 at 133 West 13th Street for many years. This holdover proceeding seeks to evict tenants from apartment 4 on the ground that this apartment was not their primary residence.
The evidence at trial strongly supported landlord’s contention that apartment 4 was utilized by tenants essentially for storage and convenience. Video surveillance footage and analysis, which the trial court deemed “credible,” established that: tenant Sandow did not enter apartment 4 on 637 of the 720 days in the two-year Golub period, and only spent a total of about 39 hours in apartment 4 in two years; tenant Stoller-man only entered apartment 4 on 10 days in two years, spending a total of less than one hour there; and neither tenant spent the night in apartment 4 during this time. Moreover, Con Edison records showed that electric consumption for apartment 4 was negligible, not exceeding 25 kilowatts per month during 19 months of the 24-month Golub period, and never exceeding 50 kilowatts per month. In contrast, during the same period, electric consumption for apartment 3 was significantly higher, never dipping below 100 kilowatts per month, and was often several times higher, and reaching as high as 1,000 kilowatts per month.
Tenants’ affidavits, which were admitted into evidence, unequivocally stated that Stollerman primarily resides in apartment 3. Stollerman also owns a home in Lenox, Massachusetts and co-owns a cooperative apartment in Lenox with *10 Sandow. In addition, Sandow testified at trial that she cooks, eats, bathes, watches television, spends her evenings, and often sleeps in apartment 3, as she has transformed her bedroom in apartment 4 into a “walk-in closet.” Her dog stays exclusively in apartment 3.
Landlord’s witness testified that he entered apartment 4 on two occasions during the Golub period, once in 2008 and then in the winter of 2009-2010, and characterized the apartment as a dirty storage area, with boxes piled up to six-feet high and a narrow pathway through the pile. He further testified that the boxes blocked the kitchen and bathroom, and that boxes had to be removed to reach the window area. The Department of Housing Preservation and Development subsequently issued a violation for a Collyer condition in apartment 4.
Notwithstanding this evidence, Civil Court dismissed the petition after trial, stating in its bench decision that “[b]y implication there was an understanding that [tenants] could do what they wanted with those two apartments”; that tenants “treated [apartments 3 and 4] as one apartment and went back and fo[rth] between them and left stuff there”; and that tenants were permitted to utilize apartment 4 “in the fashion that they see fit.” Significantly, the trial court’s determination was reached without any factual finding that tenants credibly rebutted landlord’s persuasive, if not compelling, proof of nonprimary residence or otherwise established that they actually require or actually use apartment 4 for dwelling purposes (see Briar Hill Apts. Co. v Teperman, 165 AD2d 519 [1991]).
On landlord’s appeal, we reverse and grant landlord the pos-sessory judgment which, upon the evidence, should have been awarded by the trial court (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492 [1983]; Nestor v Britt, 213 AD2d 255 [1995]). Even when “due regard” is given to the views of the trial judge (see 300 E. 34th St. Co. v Habeeb, 248 AD2d 50, 55 [1997], quoting Universal Leasing Servs. v Flushing Hae Kwan Rest., 169 AD2d 829, 830 [1991]), we believe that the trial record as a whole, including landlord’s surveillance evidence and documentary showing of negligible electrical usage in particular, compels a finding that tenants neither required nor used apartment 4 for actual dwelling purposes (see Briar Hill Apts. Co. v Teperman, 165 AD2d 519 [1991]; see also Carmine Ltd. v Gordon, 41 AD3d 196, 199 [2007]). The trial court’s conclusion, no matter how well-intentioned, that tenants were entitled to utilize apartment 4 *11 “in the fashion that they see fit” based upon a purported “understanding” “by implication” was clearly erroneous and contrary to public policy.
The Rent Stabilization Law (RSL) and the regulations promulgated thereunder impose exacting requirements in connection with the leasing of stabilized housing units in New York City. These requirements include explicit limitations on rents that may be legally charged. Critically, “[a]s a corollary to charging only the legally enforceable rent, a landlord is entitled to require, inter alia, that the tenant occupy the unit as a primary residence; if that condition is breached, then the tenant loses the entitlement of RSL rights, such as that of a renewal lease” (390 W. End Assoc. v Hard, 298 AD2d 11, 14-15 [2002]). Any agreement to waive the primary residence requirement of the rent stabilization laws is against public policy and unenforceable (see Riverside Syndicate, Inc. v Munroe, 10 NY3d 18, 22-23 [2008]; Park Towers S. Co. v Universal Attractions, 274 AD2d 312, 313 [2000]). Public policy is not advanced by permitting housing units to be held, partly or wholly unuti-lized, by tenants whose interest is pecuniary gain rather than affordable housing (see Hughes v Lenox Hill Hosp., 226 AD2d 4, 6 [1996], lv denied 90 NY2d 829 [1997]).
“A tenant of a stabilized apartment who maintains a primary residence elsewhere, and also seeks to retain the stabilized apartment for convenience or for considerations of personal gain, is not one who is a victim of the housing crisis but may rather be said to be a contributing and exacerbating factor in the continuation of the critical shortage of affordable apartments” (Cier Indus. Co. v Hessen, 136 AD2d 145, 150 [1988]).
In view of this strong public policy, and since a preponderance of the evidence clearly establishes that apartment 4 was not tenants’ primary residence, landlord’s holdover petition must be granted.
Lowe, III, P.J., Schoenfeld and Shulman, JJ., concur.